**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01306-REB-KLM

SALBA CORP., N.A., a Canadian corporation,
SALBA SMART NATURALS PRODUCTS, a Colorado limited liabilty company,
WILLIAM A. RALSTON, and
RICHARD L. RALSTON,

    Plaintiffs,

v.

X FACTOR HOLDINGS, LLC, an inactive Florida limited liability company, and
ANCIENT NATURALS, LLC, a Florida limited liability company,

    Defendants and Counter-Claimants, and

MITCHELL A. PROPSTER, a resident of the State of Florida,
CORE NATURALS, LLC, a Florida limited liability company, and
NATURAL GUIDANCE, LLC, a Florida limited liability company,

    Defendants.[1]

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

**Blackburn, J.**

This matter is before me on the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45][2] filed December 13, 2013. The defendants filed a response [#56], and the plaintiffs filed a reply [#57]. On January 6, 2014, I conducted a hearing on the motion at which I received evidence and argument. Because the motion was heard on an expedited basis, the evidence in the record may not present

---

[1] These defendants are named in the caption as a result of the **Order Granting Motion To Amend Complaint** [#61] entered January 13, 2014.

[2] "[#45]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

a comprehensive and complete picture of the relevant evidence. Therefore, I address in this order only the request of the plaintiffs for a temporary restraining order. The motion for preliminary injunction will be resolved after the parties have had an opportunity to present any additional relevant evidence. I deny the motion for temporary restraining order.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), § 1338(a) (trademark and copyright), § 1338(b) (unfair competition claim joined with copyright or trademark claim), § 1367 (supplemental), and 15 U.S.C. § 1121 (trademark).

## II. STANDARD OF REVIEW

A party seeking a temporary restraining order or preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980); ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent). In addition, a party seeking a temporary restraining order also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order. FED. R. CIV. P. 65(b).

When the moving party has established that the three harm factors tip decidedly in the movant's favor, the probability of success requirement is somewhat relaxed, and

the movant need only show questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. ***Nova Health Systems v. Edmondson*** 460 F.3d 1295, 1298 n. 6 (10th Cir. 2006). On the other hand, some types of temporary restraining orders or preliminary injunctions are disfavored and, therefore, require the plaintiff to satisfy a heightened burden of showing that the four primary factors

> weigh heavily and compellingly in movant's favor before such an injunction may be issued. The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits.

***Kikumura v. Hurley***, 242 F.3d 950, 955 (10th Cir. 2001) (internal quotation and citation omitted). For the purpose of resolving the motion for temporary restraining order addressed in this order, I conclude that neither the relaxed nor the heightened burden of proof is applicable.

### III. BACKGROUND

This case concerns disputes about the use by the defendants of trademarks and other materials related to the Salba trademark used by the plaintiffs. In the past, both the plaintiffs and the defendants have used the Salba name and associated artwork in the sale of chia seeds and related products. In the original complaint [#1], the plaintiffs asserted claims for (1) trademark counterfeiting and infringement; (2) federal unfair competition and false advertising; (3) deceptive trade practices; (4) cyber-squatting; and (5) common law trademark infringement and unfair competition. These claims were brought against defendants X Factor Holdings, LLC and Ancient Naturals, LLC. The parties reached a settlement and, in early March of 2013, executed a settlement agreement.

Now, the plaintiffs contend that X Factor Holdings, LLC and Ancient Naturals, LLC have violated the settlement agreement by continuing to use the Salba trademarks owned by the defendants and by using packaging that is illicitly similar to packaging used by the plaintiffs to sell products under the Salba name. As named defendants, X Factor Holdings, LLC and Ancient Naturals, LLC signed the settlement agreement. In addition, the settlement agreement was signed by Mitchell Propster, an individual closely related to these two defendant entities, and two other entities tied to Mr. Propster, Core Naturals, LLC and Natural Guidance, LLC. Mr. Propster, Core Naturals, LLC, and Natural Guidance, LLC were not named as defendants in the original complaint [#1].

The plaintiffs now contend that X Factor Holdings, LLC, Ancient Naturals, LLC, Mr. Propster, Core Naturals, LLC, and Natural Guidance, LLC have violated the settlement agreement. The plaintiffs seek a temporary restraining order prohibiting Mr. Propster and the four LLC entities from violating the settlement agreement. In an order entered concurrently with this order, I granted the motion [#44] filed by the plaintiffs seeking permission to file an amended complaint. In the amended complaint, the plaintiffs assert new claims based on the alleged violation of the settlement agreement, and the plaintiffs name Mr. Propster, Core Naturals, LLC and Natural Guidance, LLC as additional defendants.

## IV. FACTS[3]

---

[3] The facts described below have been established by a preponderance of the evidence, based on the evidence currently in the record. The findings of fact below are preliminary and are made solely for the purpose of determining the motion for a temporary restraining order. If the parties have additional evidence relevant to the issues discussed in this order and to the request of the plaintiffs for a preliminary injunction, they may present that evidence to the court before the motion for preliminary injunction is resolved.

The plaintiffs own and use the name Salba to sell seeds known as Salvia Hispanica L, commonly known as chia seeds. The plaintiffs claim their Salba chia seed product is uniquely valuable because they sell under the Salba name two strains of chia seeds that are registered varieties of those seeds. These two registered varieties, the plaintiffs claim, have unique nutritional value because they provide nutritional consistency, unlike other chia seeds. The defendants also sell chia seeds, but they do not sell the two registered varieties of chia seeds sold by the plaintiffs.

Exhibit 1, admitted in evidence at the January 6, 2014, hearing, is the Settlement Agreement and Release (Settlement Agreement) agreed to by the parties when they agreed to settle this case. The Settlement Agreement can be found also at [#45-9], CM/ECF pp. 2 - 67. The Settlement Agreement includes exhibits with letter designations. Exhibit B to the Settlement Agreement is a Trademark Assignment and Copyright License. In the Trademark Assignment and Copyright License, the defendants agreed to transfer the "SALBA Works" to plaintiff Salba Smart Natural Products, LLC. *Trademark Assignment and Copyright License* [#45-9], CM/ECF pages 27 - 39. The "SALBA Works" are defined as

> materials containing the word SALBA or any derivative or form thereof, including, without limitation, all copyrights associated with documents, illustrations, labels, photographs, representations or other forms of use of the word SALBA including website content hosted as of the date that the Settlement Agreement is signed at the salba.com, salbausa.com, salbastore.com, salbarx.com or salbamiracle.com domains to which Transferor claims or may claim any copyright under United States federal law, state law, common law, or the law of any foreign country (the "SALBA Works").

*Trademark Assignment and Copyright License* [#45-9], CM/ECF p. 27. Under this definition, the key feature that defines the SALBA Works is the use of the word

5

Salba or a derivative form of that word.

In addition, the defendants granted a copyright license to plaintiff Salba Smart Natural Products, LLC. The copyright license provides for

> an irrevocable, unrestricted, worldwide, perpetual, royalty free, fully assignable, fully transferable right and license to use, modify, reproduce, distribute, display, perform, publish, sell, prepare derivative works of, and otherwise utilize and exploit ("Use") the SALBA Works.

*Id.*, ¶ 2.A. In addition, the copyright license provides:

> If for any reason the foregoing grant of license is deemed insufficient to grant Transferee an unrestricted, worldwide, perpetual, royalty free, exclusive, fully assignable right and license to the SALBA Works, then Transferor agrees to and hereby does covenant to Transferee not to enforce any rights in or to the SALBA Works against Transferee . . . .

*Id.*

The Settlement Agreement and Release includes a paragraph titled "Permanent Cessation of Use," which is paragraph number three of the Settlement Agreement. In this paragraph, the defendants agreed to cease using the word SALBA and any SALBA-formative mark in the various ways specified in the lettered sub-paragraphs of paragraph three. Most of these sub-paragraphs limit the actions of the defendants only insofar as the defendants might use the "SALBA Works," which are defined primarily by use of the word Salba or any Salba formative marks.

However, sub-paragraph D of paragraph three includes a broader prohibition. Subparagraph D provides that the defendants shall permanently cease and desist from

> performing any action or using any trademark, symbol, imagery, slogan or any false designation or origin or false advertising which is likely to cause confusion or mistake or lead the trade and/or public into believing that SALBA and the common species of chia, *Salvia hispanica L*, are one and the same, or that Plaintiffs are the sponsor of Defendants/Propster Entities or that Defendants' or Propster Entities'

6

>products originate with Plaintiffs' SALBA or are connected or offered with the approval, consent, authorization or under the supervision of Plaintiffs.

*Settlement Agreement and Release*, ¶ 3(D).

Before the Settlement Agreement, one or more of the defendants sold chia seeds using the Salba name. After the Settlement Agreement, one or more of the defendants sold chia seeds under the names Salvia and Chiajoy. The graphics used on the Salvia and Chiajoy labels produced by the defendants after the Settlement Agreement are very similar to the graphics used on the labels used by the plaintiffs prior to September 2013. The similarity of these label graphics is demonstrated by comparing Exhibits 6 and 15, showing examples label graphics used by the plaintiffs prior to September 2013, with Exhibits 7 and 24, showing examples of label graphics used by the defendants after the Settlement Agreement. There is no evidence that the defendants used the name Salba or any derivative word on their labels after the Settlement Agreement was executed. At the January 6, 2014, hearing, Mr. Propster testified that he became aware recently that the word Salba was used as an intrawebsite key word on one or more websites operated by his company. That intrawebsite key word has been removed from the websites controlled by Mr. Propster.

In September 2013, the plaintiffs changed the graphics used on the labels they place on jars and other containers in which they sell products under the Salba name. The new label graphics adopted by the plaintiffs are shown in Exhibit 57. The new label graphics used by the plaintiffs differ significantly from the label graphics used by the defendants after the Settlement Agreement. There is no evidence in the record showing that the plaintiffs continue to market any Salba

products using the label graphics used by the plaintiffs prior to September 2013.

## V. ANALYSIS

### A. Likelihood of Success on the Merits

The plaintiffs base their request for a temporary restraining order solely on the breach of contract claim asserted in their amended complaint. In this claim, the plaintiffs allege that the defendants have violated the Settlement Agreement by using forms of the word Salba in the sales, distribution, and advertising materials used by the defendants and by using trademarks, symbols, imagery, and slogans similar to those of the plaintiffs in marketing the Salvia and Chiajoy products sold by the defendants. I conclude that the plaintiffs have presented evidence that demonstrates a substantial likelihood of eventual success on the merits of their breach of contract claim against the defendants. However, the scope of the breach of contract claim on which the plaintiffs have demonstrated a substantial likelihood of eventual success is narrow.

At the January 6, 2014, hearing, no evidence was presented indicating that any of the defendants currently are using the word Salba, or any derivative form of that word, or are likely to do so in the foreseeable future. Thus, there is no evidence in the record that any of the defendants are using, or are likely to use in the future, the "SALBA Works," as that term is defined in the Settlement Agreement. To the extent the plaintiffs base their breach of contract claim on an alleged use by the defendants of the "SALBA Works," the plaintiffs have not shown a substantial likelihood of success on the merits of their breach of contract claim.

As noted above, paragraph 3(D) of the Settlement Agreement prohibits the defendants form using any trademark, symbol, or imagery that is likely to cause confusion or mistake or lead the public or the trade into believing that the plaintiffs are

the sponsor of the products of the defendants, that the plaintiffs are affiliated with the defendants, or that Salba products and the common species of chia, Salvia Hispanica L, are one and the same. The similarity between the label graphics used by the defendants after the Settlement Agreement and the label graphics used by the plaintiffs until September 2013 is very close. That similarity is close enough that it is likely to cause the type of confusion or mistake addressed in paragraph 3(D) of the Settlement Agreement. Thus, the plaintiffs have shown a substantial likelihood of success on the merits of their breach of contract claim based on this alleged violation of paragraph 3(D) of the Settlement Agreement, but only for the period between execution of the Settlement Agreement and September 2013.

### B. Irreparable Injury

To establish irreparable injury for the purpose of a temporary restraining order, the plaintiffs must show that they will suffer irreparable injury and that the irreparable injury is of such imminence that there is a clear and present need for equitable relief to prevent the harm. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Generally, an injury is considered to be irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation and citation omitted). *See also Gitlitz v. Bellock*, 171 P.3d 1274, 1279 (Colo. App. 2007). Further, irreparable injury cannot be established absent a showing that harm in the future is threatened. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 111, (1983). An temporary restraining order of preliminary injunction cannot

9

prevent harm that occurred in the past.

In this case, the only claim on which the plaintiffs have shown a substantial likelihood of success on the merits is the breach of contract claim based on paragraph 3(D) of the Settlement Agreement and the previously existing similarity between the label graphics of the plaintiffs and the label graphics of the defendants.  The evidence currently in the record does not show that this similarity continues to exist.  As a result, the plaintiffs have not shown that there is a threat of future injury to the plaintiffs which will be caused by this similarity.  Focusing on the claim on which the plaintiffs have shown a substantial likelihood of success on the merits, the plaintiffs have not shown that they will suffer irreparable injury absent a temporary restraining order.

### C.  Other Factors

Given the failure of the plaintiffs to establish that they will suffer immediate and irreparable injury absent a temporary restraining order, I decline to address the other relevant factors.  The plaintiffs would not be entitled to a temporary restraining order even if they had shown that the balance of harms and public interest factors weigh in their favor.

### VI.  CONCLUSION & ORDERS

Having considered the evidence presented, arguments advanced, and authorities cited by the parties in the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45] filed December 13, 2013, the defendants response [#56], and the plaintiffs reply [#57], together with the  evidence submitted, arguments advanced, and authorities cited at the January 6, 2014, hearing, I find and conclude that the plaintiffs have not demonstrated that they are entitled to a temporary restraining order.

**THEREFORE, IT IS ORDERED** as follows:

1. That to the extent the plaintiffs seek a temporary restraining order in the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45] filed December 13, 2013, that portion of the motion is **DENIED**; and

2. That the request for issuance of a preliminary injunction in the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45] filed December 13, 2013, **REMAINS** pending.

Dated January 14, 2014, at Denver, Colorado.

**BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge