**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01306-REB-KLM

SALBA CORP., N.A., a Canadian corporation,
SALBA SMART NATURALS PRODUCTS, a Colorado limited liabilty company,
WILLIAM A. RALSTON, and
RICHARD L. RALSTON,

      Plaintiffs,

v.

X FACTOR HOLDINGS, LLC, an inactive Florida limited liability company, and
ANCIENT NATURALS, LLC, a Florida limited liability company,
MITCHELL A. PROPSTER, a resident of the State of Florida,
CORE NATURALS, LLC, a Florida limited liability company, and
NATURAL GUIDANCE, LLC, a Florida limited liability company,

      Defendants and Counter-Claimants.

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

**Blackburn, J.**

This matter is before me on the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45][1] filed December 13, 2013. To the extent the plaintiffs seek the entry of a preliminary injunction, I deny the motion.

On January 6, 2014, I conducted a hearing on the motion. Because the motion was heard on an expedited basis, I found that the evidence in the record may not present a comprehensive and complete picture of the relevant evidence. Therefore, I limited my analysis to the motion for a temporary restraining order. Prior to the January 6, 2014, hearing, the defendants filed a response [#56], the plaintiffs filed a

---

[1] "[#45]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

reply [#57]. After the hearing, I entered an order [#63] denying the motion to the extent the plaintiffs sought a temporary restraining order. Following the hearing and my order [#63], both the plaintiffs and the defendants submitted additional evidence and briefing relevant to the motion [#72, #79, #80, #81, #82, #83, and #124]. In addition, the briefing and exhibits submitted by the parties concerning the **Defendants' Motion and memorandum To Enforce Settlement Agreement** [#52] filed December 23, 2013, is relevant.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), § 1338(a) (trademark and copyright), § 1338(b) (unfair competition claim joined with copyright or trademark claim), § 1367 (supplemental), and 15 U.S.C. § 1121 (trademark).

## II. STANDARD OF REVIEW

A party seeking a temporary restraining order or preliminary injunction must show: (1) that the movant has a substantial likelihood of eventual success on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. **Lundgrin v. Claytor**, 619 F.2d 61, 63 (10th Cir. 1980); **Heideman v. S. Salt Lake City**, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent).

When the moving party has established that the three harm factors tip decidedly in the movant's favor, the probability of success requirement is somewhat relaxed, and the movant need only show questions going to the merits so serious, substantial,

difficult, and doubtful as to make them a fair ground for litigation. ***Nova Health Systems v. Edmondson*** 460 F.3d 1295, 1298 n. 6 (10th Cir. 2006). On the other hand, some types of temporary restraining orders or preliminary injunctions are disfavored and, therefore, require the plaintiff to satisfy a heightened burden of showing that the four primary factors

> weigh heavily and compellingly in movant's favor before such an injunction may be issued. The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits.

***Kikumura v. Hurley***, 242 F.3d 950, 955 (10th Cir. 2001) (internal quotation and citation omitted). For the purpose of resolving the motion for preliminary injunction addressed in this order, I conclude that neither the relaxed nor the heightened burden of proof is applicable.

### III. BACKGROUND

This case concerns disputes about the use by the defendants of trademarks and other materials related to the Salba trademark used by the plaintiffs. In the past, both the plaintiffs and the defendants have used the Salba name and associated artwork in the sale of chia seeds and related products. In the original complaint [#1], the plaintiffs asserted claims for (1) trademark counterfeiting and infringement; (2) federal unfair competition and false advertising; (3) deceptive trade practices; (4) cyber-squatting; and (5) common law trademark infringement and unfair competition. These claims were brought against defendants X Factor Holdings, LLC and Ancient Naturals, LLC. The parties reached a settlement and, in early March 2013, executed a settlement agreement.

Now, the plaintiffs contend that defendants X Factor Holdings, LLC and

Ancient Naturals, LLC have violated the settlement agreement by continuing to use the Salba trademarks owned by the defendants and by using packaging that is illicitly similar to packaging used by the plaintiffs to sell products under the Salba name. As named defendants, X Factor Holdings, LLC and Ancient Naturals, LLC signed the settlement agreement. In addition, the settlement agreement was signed by Mitchell Propster, an individual closely related to these two defendant entities, and two other entities tied to Mr. Propster, Core Naturals, LLC and Natural Guidance, LLC. Mr. Propster, Core Naturals, LLC, and Natural Guidance, LLC were not named as defendants in the original complaint [#1].

By my order [#61], I granted the motion [#44] filed by the plaintiffs seeking permission to file an amended complaint. In the amended complaint, the plaintiffs assert new claims based on the alleged violation of the settlement agreement, and the plaintiffs name Mr. Propster, Core Naturals, LLC and Natural Guidance, LLC as additional defendants.

The plaintiffs now contend that X Factor Holdings, LLC, Ancient Naturals, LLC, Mr. Propster, Core Naturals, LLC, and Natural Guidance, LLC have violated the settlement agreement. The plaintiffs seek a preliminary injunction prohibiting Mr. Propster and the four LLC entities from violating the settlement agreement.

## IV. FACTS [2]

The plaintiffs own and use the name Salba to sell seeds known as Salvia Hispanica L, commonly known as chia seeds. The plaintiffs claim their Salba chia seed product is uniquely valuable because they sell under the Salba name two

---

[2] The facts described below have been established by a preponderance of the evidence, based on the evidence currently in the record. The findings of fact below are preliminary and are made solely for the purpose of determining the motion for preliminary injunction.

4

strains of chia seeds that are registered varieties of those seeds. These two registered varieties, the plaintiffs claim, have unique nutritional value because they provide nutritional consistency, unlike other chia seeds. The defendants also sell chia seeds, but they do not sell the two registered varieties of chia seeds sold by the plaintiffs.

Exhibit 1, admitted in evidence at the January 6, 2014, hearing, is the Settlement Agreement and Release (Settlement Agreement) reached by the parties when they agreed to settle this case. The Settlement Agreement can be found also at [#45-9], pp. 2 - 67.

The Settlement Agreement includes exhibits with letter designations. Exhibit B to the Settlement Agreement is a Trademark Assignment and Copyright License. In the Trademark Assignment and Copyright License, the defendants agreed to transfer the "SALBA Works" to plaintiff Salba Smart Natural Products, LLC. *Trademark Assignment and Copyright License* [#45-9], CM/ECF pages 27 - 39. The "SALBA Works" are defined as

> materials containing the word SALBA or any derivative or form thereof, including, without limitation, all copyrights associated with documents, illustrations, labels, photographs, representations or other forms of use of the word SALBA including website content hosted as of the date that the Settlement Agreement is signed at the salba.com, salbausa.com, salbastore.com, salbarx.com or salbamiracle.com domains to which Transferor claims or may claim any copyright under United States federal law, state law, common law, or the law of any foreign country (the "SALBA Works").

*Trademark Assignment and Copyright License* [#45-9], p. 27. Under this definition, the key feature that defines the SALBA Works is the use of the word Salba or a derivative form of that word.

In addition, the defendants granted a copyright license to plaintiff Salba Smart

5

Natural Products, LLC.  The copyright license provides for

> an irrevocable, unrestricted, worldwide, perpetual, royalty free, fully assignable, fully transferable right and license to use, modify, reproduce, distribute, display, perform, publish, sell, prepare derivative works of, and otherwise utilize and exploit ("Use") the SALBA Works.

*Id.*, ¶ 2.A.  In addition, the copyright license provides:

> If for any reason the foregoing grant of license is deemed insufficient to grant Transferee an unrestricted, worldwide, perpetual, royalty free, exclusive, fully assignable right and license to the SALBA Works, then Transferor agrees to and hereby does covenant to Transferee not to enforce any rights in or to the SALBA Works against Transferee . . . .

*Id.*

The Settlement Agreement and Release includes a paragraph titled "Permanent Cessation of Use," which is paragraph number three of the Settlement Agreement.  In this paragraph, the defendants agreed to cease using the word SALBA and any SALBA-formative mark in the various ways specified in the lettered sub-paragraphs of paragraph three.  Most of these sub-paragraphs limit the actions of the defendants only insofar as the defendants might use the "SALBA Works," which are defined primarily by use of the word Salba or any Salba formative marks.

However, sub-paragraph D of paragraph three includes a broader prohibition.  Subparagraph D provides that the defendants shall permanently cease and desist from

> performing any action or using any trademark, symbol, imagery, slogan or any false designation or origin or false advertising which is likely to cause confusion or mistake or lead the trade and/or public into believing that SALBA and the common species of chia, *Salvia hispanica L*, are one and the same, or that Plaintiffs are the sponsor of Defendants/Propster Entities or that Defendants' or Propster Entities' products originate with Plaintiffs' SALBA or are connected or offered with the approval, consent, authorization or under the supervision of Plaintiffs.

6

*Settlement Agreement and Release,* ¶ 3(D).

Before the Settlement Agreement, one or more of the defendants sold chia seeds using the Salba name. After the Settlement Agreement, one or more of the defendants sold chia seeds under the names Salvia and Chiajoy. The graphics used on the Salvia and Chiajoy labels produced by the defendants after the Settlement Agreement are very similar to the graphics used on the labels used by the plaintiffs prior to September 2012. The similarity of these label graphics is demonstrated by comparing Exhibits 6 and 15, showing examples of label graphics used by the plaintiffs prior to September 2012, with Exhibits 7 and 24, showing examples of label graphics used by the defendants after the Settlement Agreement.

There is no evidence that any of the defendants used the name Salba or any derivative word on their labels after the Settlement Agreement was executed. At the January 6, 2014, hearing, Mr. Propster testified that he became aware sometime before the hearing that the word Salba was used as an intrawebsite key word on one or more websites operated by his company. That intrawebsite key word has been removed from the websites controlled by Mr. Propster. With that one small exception, there is no evidence that the defendants otherwise used the name Salba or any derivative word in the marketing of their products after the Settlement Agreement was executed.

In September 2012, the plaintiffs changed the graphics used on many, and maybe all, of the labels they place on jars and other containers in which they sell chia seeds. The new label graphics adopted by the plaintiffs are shown in Exhibit 57. The new label graphics used by the plaintiffs differ significantly from the label graphics used by the defendants after the Settlement Agreement. Evidence

submitted relevant to the motion for preliminary inunction [#45] and the motion to enforce settlement agreement [#52] indicates that there is a material dispute of fact about whether the plaintiffs or any of them continue to market products, especially chia seeds, using label graphics that are similar to the label graphics used by the defendants to market chia seeds.  This factual dispute is relevant primarily to paragraph 3(D) of the Settlement Agreement, quoted above, which prohibits the defendants from using any trademark, symbol, or imagery likely to cause confusion between the products of the defendants and the SALBA products of the plaintiffs.

The plaintiffs claim also to sell snack chips using labels with an appearance similar to the labels used by the defendants on bottles of chia seeds. The fact that these two products are dissimilar and the less striking similarity between the labels presents, at most, a debatable issue about violation of paragraph 3(D) of the Settlement Agreement.

### V.  ANALYSIS

#### A.  Likelihood of Success on the Merits

The plaintiffs base their request for a preliminary injunction solely on the breach of contract claim asserted in their amended complaint.  In this claim, the plaintiffs allege that the defendants have violated the Settlement Agreement by using forms of the word Salba in the sales, distribution, and advertising materials used by the defendants and by using trademarks, symbols, imagery, and slogans similar to those of the plaintiffs in marketing the Salvia and Chiajoy products sold by the defendants.  Given the current state of the record, I conclude that the plaintiffs have not presented evidence that demonstrates a substantial likelihood of eventual success on the merits of their breach of contract claim against the defendants.

There is no evidence that any of the defendants used the name Salba or any derivative word on their labels after the Settlement Agreement was executed. Thus, there is no evidence in the record that any of the defendants are using, or are likely to use in the future, the "SALBA Works," as that term is defined in the Settlement Agreement. Thus, to the extent the plaintiffs base their breach of contract claim on an alleged use by the defendants of the "SALBA Works," the plaintiffs have not shown a substantial likelihood of success on the merits of their breach of contract claim.

Paragraph 3(D) of the Settlement Agreement prohibits the defendants from using any trademark, symbol, or imagery that is likely to cause confusion or mistake or lead the public or the trade into believing that the plaintiffs are the sponsor of the products of the defendants, that the plaintiffs are affiliated with the defendants, or that Salba products and the common species of chia, Salvia Hispanica L, are one and the same. The similarity between the label graphics used by the defendants after the Settlement Agreement and the label graphics used by the plaintiffs at least until September 2012 is substantial. That similarity is close enough that it is likely to cause the type of confusion or mistake addressed in paragraph 3(D) of the Settlement Agreement.

However, the evidence in the record shows there is a significant dispute of fact about whether or not the plaintiffs continue to use label graphics that are substantially similar to the label graphics used by the defendants. Given the competing and facially credible evidence on this point, I cannot conclude that the plaintiffs have demonstrated a substantial likelihood that they can show that the label graphics currently used by the plaintiffs and the label graphics currently used by the defendants are so similar that the defendants have violated paragraph 3(D) of the Settlement Agreement. Thus, to the extent the plaintiffs base their breach of contract claim on an alleged use by the

defendants of any trademark, symbol, or imagery that is likely to cause confusion or mistake or lead the public or the trade into believing that the plaintiffs are the sponsor of the products of the defendants, the plaintiffs have not shown a substantial likelihood of success on the merits of their breach of contract claim.

In my order [#63] denying the motion for temporary restraining order, I found that the plaintiffs had shown a substantial likelihood of success on the merits of their breach of contract claim based on this alleged violation of paragraph 3(D) of the Settlement Agreement, but only for the period between execution of the Settlement Agreement and September 2013. On further review of the evidence, I conclude that the evidence currently in the record shows that is was in September 2012 that the plaintiffs changed the graphics used on many, and maybe all, of the labels they place on jars and other containers in which they sell chia seeds. Further, new evidence submitted by the parties demonstrates a material factual dispute about whether or not the plaintiffs continue to use label graphics that are substantially similar to the label graphics used by the defendants.

### B. Irreparable Injury

To establish irreparable injury for the purpose of a preliminary injunction, the plaintiffs must show that they will suffer irreparable injury and that the irreparable injury is of such imminence that there is a clear and present need for equitable relief to prevent the harm. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Generally, an injury is considered to be irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages. "To constitute irreparable harm, an injury must be certain, great, actual and

not theoretical." ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation and citation omitted). ***See also Gitlitz v. Bellock***, 171 P.3d 1274, 1279 (Colo. App. 2007). Further, irreparable injury cannot be established absent a showing that harm in the future is threatened. ***See, e.g., City of Los Angeles v. Lyons***, 461 U.S. 95, 111, (1983). A temporary restraining order or preliminary injunction cannot prevent harm that occurred in the past.

The evidence currently in the record leaves a substantial question about whether any of the defendants currently are using label graphics in violation of paragraph 3(D) of the Settlement Agreement or whether they are likely to do so in the future. As a result, there is significant doubt about whether the plaintiffs are being injured irreparably as a result of the use of such labels by any of the defendants. Thus, I conclude that the plaintiffs have not shown that they will suffer irreparable injury absent a preliminary injunction.

### C. Other Factors

Given the failure of the plaintiffs to show a substantial likelihood of success on the merits or to establish that they will suffer immediate and irreparable injury absent a preliminary injunction, I decline to address the other relevant factors. The plaintiffs would not be entitled to a preliminary injunction even if they had shown that the balance of harms and public interest factors weigh in their favor.

### VI. CONCLUSION & ORDERS

Having considered the evidence presented, arguments advanced, and authorities cited by the parties in their filings cited at the beginning of this order together with the evidence submitted, arguments advanced, and authorities cited at the January 6, 2014, hearing, I find and conclude that the plaintiffs have not demonstrated that they are

entitled to a preliminary injunction.

**THEREFORE, IT IS ORDERED** as follows:

1. That to the extent the plaintiffs seek a preliminary injunction in the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45] filed December 13, 2013, that portion of the motion is **DENIED**; and

2. That the **Plaintiffs' Motion for Temporary Restraining Order / Preliminary Injunction** [#45] filed December 13, 2013, is fully resolved, and the motion **SHALL BE TERMINATED** on the docket of this case.

Dated September 10, 2014, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge